_____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                  Bk. No. 07-10705-MWV
                                                                                                        Chapter 13
Andrew E. Pysz,
        Debtor

Andrew E. Pysz and
Lawrence P. Sumski, Chapter 13 Trustee,
        Plaintiffs

v.                                                                                                       Adv. No. 08-1013-MWV

James M. Hawkins,
        Defendant

*Michelle Kainen, Esq.*
*KAINEN LAW OFFICE*
*Attorney for Andrew E. Pysz*

*Lawrence P. Sumski, Esq.*
*CHAPTER 13 TRUSTEE*

*James M. Hawkins, Esq.*
*PRO SE*

## MEMORANDUM OPINION

       The Court has before it the motion for summary judgment pursuant to 11 U.S.C. § 547(b) filed by Andrew E. Pysz (the "Debtor") and Lawrence P. Sumski, as Chapter 13 trustee (together, the "Plaintiffs"), and James M. Hawkins' (the "Defendant") objection thereto. On April 17, 2008, the Court held an evidentiary hearing on the Debtor's motion to avoid lien and the Defendant's motion to dismiss the Debtor's bankruptcy case. The Court subsequently took the Plaintiffs' motion for summary judgment under submission.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with section 157(b).

## BACKGROUND

The Defendant is the holder of a judicial lien in the amount of $43,723.14.  This lien arose from a post-judgment attachment the Defendant obtained in the Sullivan County Superior Court.  The Superior Court entered a judgment for unpaid professional services in favor of the Defendant against the Debtor and subsequently issued a writ of attachment on January 18, 2007.  The attachment was on certain logging equipment and real property located at 415 E. Mountain Road in Newport (the "Newport Property") belonging to the Debtor.  On January 19, 2007, the Defendant recorded the attachment in the Sullivan County Register of Deeds.  The Debtor owns a fifty percent interest in the Newport Property, and his mother owns the other fifty percent interest.

On April 5, 2007, the Debtor filed for protection under Chapter 13 of the Bankruptcy Code.  In his schedules, the Debtor lists the Newport Property's fair market value as $300,000.  The Defendant offered a separate appraisal report that values the Newport Property at $443,000 as of April 5, 2007.

## DISCUSSION

The Plaintiffs move for summary judgment seeking to avoid the Defendant's judicial lien as a preference under 11 U.S.C. § 547(b).  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" when "the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." Rodriquez-Pinto v. Tirado-Delgado, 982 F.2d 34, 38 (1st Cir. 1993) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)). A fact is "material" when it has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 581 (1st Cir. 1994).

> Section 547(b) provides:
>
> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
>
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made–
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if–
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). "[T]he trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section[.]" Id. § 547(g).

First, there is no issue that the obtainment of the attachment was a transfer of the Debtor's interest in property. See, e.g., Bova v. St. Vincent De Paul Corp. (In re Bova), 272 B.R. 49, 51 (Bankr. D.N.H. 2002). Second, three of the five elements required to avoid a transfer under section 547(b) are unequivocally present here. It is undisputed that the subject lien was for the benefit of a creditor. (See Compl. ¶ 12; Answer.) It is also undisputed that the subject lien was for or on account of an antecedent debt. (See Compl. ¶ 13; Answer.) Finally, the attachment occurred during the ninety-day preference period. The Defendant obtained and recorded the writ of attachment on January 18th and 19th,

respectively, in 2007, and the Debtor filed his voluntary petition on April 5, 2007. As such, the issues in this preference action are whether the Debtor was insolvent at the time of the attachment and whether the Defendant would receive more with the judicial lien than he would without the lien in a Chapter 7 case.

### A. Insolvency under Section 547(b)(3)

The term "insolvent" means "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation[,]" excluding property that may be exempt under section 522. 11 U.S.C. § 101(32)(A). "For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." Id. § 547(f). The creditor bears the burden of overcoming this presumption. Bova, 272 B.R. at 51-52. "A creditor may rebut the presumption by introducing some evidence that the debtor was not in fact insolvent at the time of the transfer." Roblin Indus., Inc. v. Ford Motor Co. (In re Roblin Indus., Inc.), 78 F.3d 30, 34 (2nd Cir. 1996); see Koubourlis v. Koubourlis (In re Koubourlis), 869 F.2d 1319, 1322 (9th Cir. 1989) (providing that a speculative showing is insufficient to rebut the presumption).

In reading the record most favorably to the Defendant, the Court finds that there is no genuine issue regarding the Debtor's insolvency during the preference period. A presumption of insolvency exists in the instant case pursuant to section 547(f). The Defendant attempts to rebut this presumption by (i) alleging that the fair market value of the Newport Property is $443,000 and (ii) identifying non-exempt assets that the Debtor failed to schedule, which are a 1999 Timberjack skidder, 1997 Timberjack skidder, and1970 one-ton truck. First, the 1999 Timberjack skidder is a lease and not the Debtor's property. Thus, it is not part of the Court's insolvency calculation. Next, the following is a balance sheet of the Debtor's assets and liabilities, which incorporates the Defendant's fair market value for the Newport Property, the 1997 Timberjack skidder, and the 1970 one-ton truck:

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Newport Property | $443,000 | Lake Sunapee Bank | $166,516 |
| Cash | $500 | Bank of NH 2002 Chevy 4x4 | $14,000 |
| Household Goods | $1,000 | Capital One Auto Finance 2005 Chevy 4x4 | $21,850 |
| Wearing Apparel | $2,000 | | |
| Fishing Equipment | $100 | Capital One Auto Finance 2002 Escalade | $14,179 |
| 2006 Federal Tax Refund | $4,172 | Internal Revenue Service | $11,253 |
| 2005 Chevy 4x4 | $23,075 | Schedule F Debt | $126,044 |
| 2002 Chevy 4x4 | $12,000 | DSO | $3,175 |
| 2002 Cadillac Escalade | $20,000 | Town of Newport | $12,042 |
| 1970 One-Ton Truck | $1,200 | Creative Capital Arrearage | $12,555 |
| Computer & Desk | $1,000 | | ------------ |
| 10 Chainsaws and MISC Hand Tools | $6,000 | -**Total Liabilities:** **$381,614** | |
| 1997 Timberjack 240 Skidder | $3,500 | | |
| Dog | $100 | | |
| | ------------- | | |
| - Subtotal $517,647 | | | |
| Less the Mother's 50% interest in the Newport Property | - $126,242[1] | | |
| Less Homestead Exemption | - $100,000 | | |
| Less Personal Property Exemptions[2] | -20,000 | | |
| | --------------- | | |
| **Total Assets**: | **$271,405** | | |

---

[1] The Court derived the Debtor's mother's interest in the Newport Property from the Defendant's fair market value of the Newport Property ($443,000), less the net equity in the Newport Property ($252,484) not considering the Defendant's judicial lien, divided by two, to represent her half of the net equity ($126,242). The Court determined the net equity by subtracting the total liens, not including the Defendant's judicial lien, from the Defendant's proposed fair market value of the Property ($443,000 - $190,516). The liens comprising the $190,516 total are Lake Sunapee Mortgage for $166,516, Town of Newport tax lien for $12,000, and Creative Capital Arrearage for $12,000. (See Debtor's Mot. to Avoid Lien 1.)

[2] The total personal property exemptions does not include the Debtor's recent Schedule C amendments, in which he claims an exemption for the 1997 Timberjack skidder and 1970 one-ton truck.

As indicated above, the Debtor's total liabilities exceed his total assets. Thus, the Court finds that the Defendant fails to rebut the presumption, and the Debtor was insolvent during the ninety days preceding his bankruptcy in accordance with section 547(b)(3).

### B. "Receive More" Analysis under Section 547(b)(5)

The final element to avoid the Defendant's judicial lien as a preference under section 547(b) is a showing that the judicial lien "enables such creditor to receive more than such creditor would receive if – (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title." 11 U.S.C. § 547(b)(5). Whether section 547(b)(5) "is met turns on the status of the creditor to whom the transfer was made." Boston Pub. Co., Inc. v. Chase (In re Boston Pub. Co., Inc.), 209 B.R. 157, 173 (Bankr. D. Mass. 1997). With respect to unsecured creditors, "'[a]s long as the distribution in bankruptcy is less than one-hundred percent, any payment 'on account' to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made.'" Id. (citation omitted). "[A]s a matter of law, whenever a general unsecured creditor obtains, within the preference period, a judicial lien against a debtor who cannot fully repay his unsecured creditors, he has received a preference." Orth-O-Vision, Inc. v. Wometco Home Theatre, Inc. (In re Orth-O-Vision, Inc.), 49 B.R. 943, 945 (Bankr. E.D.N.Y. 1985).

In the instant case, the Debtor's liabilities exceed his assets. As such, under a hypothetical Chapter 7 liquidation analysis, the Debtor would be unable to repay his general unsecured creditors 100%.[3] The Defendant's judgment was for unpaid professional services, which, absent the attachment, is a general unsecured debt. By obtaining and recording the attachment, the Defendant converted an

---

[3] Under a Chapter 7 liquidation analysis, general unsecured creditors stand to receive a 7.96% dividend. The Debtor's total liabilities less Schedule F debts is $255,570 ($381,614 - $126,044). The Debtor's assets total $271,405, leaving $15,835 ($271,405 - $255,570) or a 7.96% dividend ($126,044 ÷ $15,835) to pay general unsecured creditors.

otherwise unsecured claim to a secured one.  Thus, the lien enables the Defendant to receive more than he would without the lien in a Chapter 7 case.  Therefore, the Court finds that section 547(b)(5) is satisfied.

In sum, the Court finds that there is no genuine issue that the Debtor was insolvent in accordance with section 547(b)(3), and the Defendant stands to receive more with the judicial lien in accordance with section 547(b)(5).  Accordingly, the Court finds that all the preferential elements exist in the instant case, and the judicial lien is a preferential transfer subject to avoidance under section 547(b).

## CONCLUSION

For the reasons set out herein, the Court grants summary judgment in favor of the Plaintiffs.  This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate final judgment consistent with this opinion.

DATED this 7th day of May, 2008, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge